IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RYAN SEAL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA,<br>OFFICER MATTHEW GORDON,<br>in his individual capacity,<br>and<br>OFFICER JOHN DOE<br>in his individual capacity,<br><br>    Defendants. | CIVIL CASE NO.: |

## **COMPLAINT FOR DAMAGES**

COMES NOW Ryan Seal, a Plaintiff in the above styled action and files this his Complaint for Damages.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. Ryan Seal ("the Plaintiff") alleges that he was illegally and unconstitutionally detained

1

and arrested by Defendant Officer John Doe of the Georgia State Patrol, and Officer Matthew Gordon, in violation of the Fourth Amendment of the United States Constitution and Georgia law. Plaintiff also alleges that he was arrested and detained in retaliation for the exercise of his First Amendment rights, and that Defendant City of Atlanta has an unconstitutional policy and practice of providing inadequate training to its officers which resulted in the false arrest that is the subject of this suit. Finally, Plaintiff alleges that a final policy maker within the City of Atlanta – Officer Matthew Gordon - ordered the arrest of the Plaintiff as a result of Plaintiff's First Amendment protected activity.

## PARTIES

1.

Plaintiff Ryan Seal is a resident of the State of Arizona, United States citizen, and over the age of eighteen.

2.

Defendant John Doe is an Officer employed by the Georgia State Patrol. The headquarters of the Georgia State Patrol are located at 959 United Ave SE, Atlanta, GA 30316 in Fulton County, Georgia. Defendant John Doe may be identified by

the photograph attached to this complaint and can be served at this address. At all times relevant to this lawsuit, Defendant John Doe acted under the color of law. Defendant John Doe is sued in his individual capacity.

3.

Defendant Matthew Gordon is an Officer employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Matthew Gordon may be served at this address. At all times relevant to this lawsuit, Defendant Matthew Gordon acted under the color of law. Defendant Matthew Gordon is sued in his individual capacity.

4.

Defendant City of Atlanta ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued. The City can be served at: 55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit, Defendant City of Atlanta acted under the color of law.

5.

All defendants reside in the Northern District of Georgia.

## JURISDICTION AND VENUE

6.

This case presents a federal question and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

8.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. § 1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

9.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and Defendants reside within this district.

10.

All of the parties herein are subject to the jurisdiction of this Court.

11.

Attorney's fees are authorized under 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

12.

On May 14, 2022 at approximately 6:30pm Plaintiff arrived at Freedom Park to attend the March for the Future of Atlanta – a peaceful protest. Plaintiff was there in his capacity as an independent film maker to document the events.

13.

From 6:30-7:30pm, a group of about 150 people walked through Atlanta neighborhoods with signs, drums, and tree branches from the forest the city intended to cut down. The march was peaceful, and participants were met with supportive honking and words of encouragement from passersby's. The participants completed their march at around 7:30 when they arrived at Inman Park – a public park.

14.

When protesters arrived at the Park the police surrounded the Park and began arresting individuals in the Park. The arrests were made pursuant to an order issued by Defendant Gordon to arrest everyone who participated in the protest. During arrests police were using tasers.

15.

Plaintiff was in the process of filming when arrested by Officer John Doe, a Georgia State Patrol officer.

16.

Plaintiff was transported to the City of Atlanta Jail where he was released without charges and without being booked.

17.

No warrant was ever sworn for Plaintiff's arrest.

## COUNT I
## 42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment
## (As to Defendants Doe, and Gordon)

18.

Paragraphs 1 through 17 are hereby re-alleged as if fully pled herein.

19.

The conduct of Defendants Doe and Gordon in causing and procuring the arrest and detention of Plaintiff without arguable probable cause constituted an unreasonable seizure of his person in violation of the Fourth Amendment.

20.

The law being clearly established in 2022 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendants are not entitled to qualified immunity.

## COUNT II
## Municipal Liability
## (As to Defendant City of Atlanta)

21.

Paragraphs 1 through 17 are hereby re-alleged as if fully pled herein.

7

22.

The City is liable under the Monell doctrine due to its failure to provide proper training and because there was a decision by a final policy maker to arrest Plaintiff or to conduct arrests in cases such as Plaintiff's.

23.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

24.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB) where 19 protesters were corralled and arrested for pedestrian in the roadway within minutes of starting to protest, and another mass arrest on September 8, 2021 when about a dozen protesters were arrested after protesting in

front of councilwoman Archibong's house (also subject of a pending lawsuit before this Court Gadomski v. City of Atlanta et al. 1:23-CV-4036-TWT) where protesters were likewise charged with pedestrian in the roadway. Baker case – much like the present case and Gadomski case involved an order given by a high ranking officer to arrest all protesters on the scene. This leads to a conclusion that there is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice of arresting protesters under the pretext of violating pedestrian in the roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it.

25.

An example of an arrest of a protester under the pretext of violating pedestrian in the roadway laws occurring during 2020 protests referred to above is a case pending in this Court styled Schilling v. Doherty, Case No.: 1:22-cv-03772-MLB. In this case a high-ranking officer Lieutenant Kevin Knapp who was in charge of the City of Atlanta police unit at the scene singled out several individuals from a crowd of protesters by pointing them out to other APD officers, identifying them as the ones that should be arrested by saying: "This one has to go, this one

has to go…" while pointing at individual protesters to be arrested. There was no indication or explanation on behalf of Lieutenant Knapp as to why those individuals should be arrested. Some time after this identification for the purpose of the arrest Donovan Schilling was arrested under the pretext of an alleged violation of pedestrian in the roadway statute which allegedly occurred after the above mentioned identification and thus could not possibly have formed a basis for Lieutenant Knapp's singling out Mr. Schilling for arrest. Schilling was arrested by Lieutenant Knapp and officer Michael Doherty. Schilling sued alleging – inter alia – first amendment retaliation and the case is currently pending in this Court. Lieutenant Knapp has since been promoted to Captain.

There are numerous other instances of similar pretextual arrests of protesters for pedestrian in the roadway violations from 2020 protest period that further discovery will reveal - since not all have made it to the docket of this Court as Sec.1983 cases.

26.

A high ranking officer in the above mentioned <u>Baker</u> case was Lieutenant Gary Harper. Harper has since been promoted to Major. A first amendment

retaliation claim has likewise been brought in the <u>Baker</u> case.

27.

In the present case the arrests occurred in Inman Park – a public park. As mentioned - this mass arrest of approximately 15 individuals followed a different "Stop Cop City" protest and was a carefully executed action where only those protesters who were deemed more vocal / more dedicated to the cause were targeted out of a much larger group of protesters. Those protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws. Indeed all but one of the May 14, 2022 arrestees had their charges dismissed, and the sole remaining one is currently awaiting an accusation in the State Court of Fulton County but has not been accused to date. Many of the arrested protesters sent *ante litem* notices to the City of Atlanta where they indicated their intention to file lawsuits and assert – among other claims – a claim of first amendment retaliation.

28.

The Plaintiff in this case was arrested because of filming and / or because he was deemed to have been a part of the protest.

29.

Plaintiff's reporter's notebook was confiscated and never returned. Upon information and belief the confiscation occurred because it was expected that his notebook would yield intelligence about the movement and / or to interfere with his reporting. In other words Mr. Seal was arrested because of his First Amendment protected activities and in retaliation for those activities.

30.

The complaint of Michael Watchulonis in <u>Watchulonis v. City of Atlanta</u> 1:23-cv-2204-TCB - yet another case pending in this Court – alleges First Amendment violations surrounding the detention of Mr. Watchulonis – a reporter – where Mr. Watchulonis was interrogated by Major Jeff Cantin and a GBI agent Mike Carter, threatened with arrest if he does not delete his footage, and then released without charges. That particular complaint alleges Defendant Cantin implying Watchulonis was one of the "little forest people" - an apparent derogatory reference to the opponents of the proposed police training facility – clearly revealing Defendant Cantin's sentiment about the political issue at hand. He then (in <u>Watchulonis</u> case) goes on to interrogate Watchulonis and illegally demand

deletion of his footage under threat of an arrest and confiscation of his filming gear. To say that the City is not aware of repeated conduct of high ranking officers such as Major Cantin is to claim willful blindness. Said complaint further contains a long list of First Amendment violations by the City of Atlanta of the right to film described therein which are hereby incorporated by reference in order to save space and cut down on the verbosity of the present complaint.

31.

The above described numerous recent instances of pretextual arrests of protesters on pedestrian in the roadway charges, as well as more broad examples of First Amendment violations committed by members of APD and with full knowledge of Defendant City of Atlanta (as described in more detail in <u>Watchulonis</u> complaint) show deliberate indifference by the City as to the need to properly train officers on First Amendment protections generally and as to illegality of using pedestrian in the roadway charges as a pretext to retaliate and / or attempt to suppress protesters' speech. Had officers been properly trained on the first amendment protections as it comes to protests the constitutional violations alleged in the present case would not have occurred. The involvement of the high

ranking officers in the above mentioned violations (Lieutenant, Captain and Major) and the fact that said officers are routinely promoted subsequent to those violations show that the City has full knowledge (let alone constructive knowledge) of those violations and is not only deliberately indifferent to them but is in fact actively promoting them. This knowledge is further demonstrated by the fact that the Baker mass arrest was discussed at a City Council meeting soon after it happened – negating any possible claim of ignorance on behalf of the City.

32.

Plaintiff alleges that Defendant Gordon acted as final policy maker for the City of Atlanta in the incident at issue in this case because his order to arrest protesters for pedestrian in the roadway under the circumstances at hand was not reviewable in any way – and therefore Defendant Gordon was delegated final policy making authority when it came to the decision of using a particular criminal charge to suppress the protest at hand. Defendant Gordon's decision was not an individualized case by case decision of reviewing each individual's conduct separately – but rather a categorical policy decision to arrest all individuals that were part of this protest – regardless of what they were actually doing and

regardless (as in case of Lev Omelchenko in the <u>Gadomski</u> case) of whether they were even protesting.

33.

Defendant Doe also acted pursuant to direct instructions from a final City of Atlanta policy maker Defendant Gordon.

34.

By virtue of issuing an order to a large group of officers to "arrest all members of the group" and by virtue of his rank Defendant Gordon acted as a final policy maker for the City of Atlanta in the incident at issue in this case.

### COUNT III
### 42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment
### (As to Defendants Doe, and Gordon)

35.

Paragraphs 1 through 17 are hereby re-alleged as if fully pled herein.

36.

Defendants deliberately initiated and or caused arrest and prosecution against this Plaintiff because Plaintiff exercised his rights to free speech and

participated in a protest. Plaintiff was targeted for arrest because an assumption was made that he was part of a protest. Plaintiff would not have been arrested but for his exercise of his First amendment rights.

37.

Defendants' actions were meant to punish the Plaintiff for his exercise of his First Amendment rights and to intimidate him from further speaking and / or filming.

38.

The intentional actions of Defendants in falsely accusing Plaintiff of a misdemeanor crime interfered with Plaintiff's right of freedom of speech and expression in violation of the First Amendment to the US Constitution.

39.

The law being clearly established in 2022 that an officer of the state cannot make false statements or make an arrest to retaliate against a person for their exercise of freedom of speech, Defendants are not entitled to qualified immunity.

40.

Plaintiff alleges that he was arrested when otherwise similarly situated

individuals not engaged in the same sort of protected speech or expression had not been arrested.

41.

Plaintiff alleges that no person has been arrested for being a Pedestrian in the Roadway when they were not engaged in the type of protected speech Plaintiff was engaged in.

42.

Had Plaintiff not been protesting Officers Doe and Gordon would not have arrested him. This is evidenced by the common knowledge that officers typically exercise their discretion not to arrest in cases of jaywalking even when probable cause is present. Plaintiff asks that the Court take judicial notice of same or allow Plaintiff to gather evidence of such typical exercise of discretion during discovery. Plaintiff alleges that Officer Doe had no arguable probable cause to arrest him for any crime and nothing in this complaint should be construed as an admission or allegation that arguable probable cause existed for any crime.

43.

Retaliatory motive is further evidenced by the fact that Defendant Gordon

ordered the arrest of all members of the group without regard for what any individual member was doing.

## DAMAGES

44.

Paragraphs 1 through 43 are hereby re-alleged as if fully pled herein.

45.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff was unreasonably and unlawfully arrested without probable cause and as a retaliation for exercising his First Amendment rights, was imprisoned and deprived of his liberty, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

46.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive

damages against each one of them.

47.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiff's constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

e) That all costs of this action be taxed against Defendants; and

f) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 14th day of May 2024.

                                         /s/Drago Cepar, Jr.
                                         Drago Cepar, Jr.
                                         Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com