IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| RYAN SEAL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:24-cv-02117-LMM |
| CITY OF ATLANTA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# ORDER

This case comes before the Court on Defendants City of Atlanta's and Officer Brandon George's Motions to Dismiss [13, 16]. After due consideration, the Court enters the following Order.

## I.     BACKGROUND

On May 14, 2022, Plaintiff Ryan Seal attended a peaceful protest called the March for the Future of Atlanta, which began at Freedom Park and ended at Inman Park. Dkt. No. [4] ¶¶ 12, 14. Plaintiff alleges that, upon reaching Inman Park, Defendant City of Atlanta police officers surrounded the park and began arresting participants of the protest, pursuant to an order from Defendant Matthew Gordon. Id. ¶ 14. While Plaintiff was filming the protest and the arrests, Defendant George arrested Plaintiff. Id. ¶ 15. Plaintiff alleges that, although he

was not violating any laws, Defendant George arrested him "because he was filming and/or because he was deemed to have shared the views of the protestors." Id.

Plaintiff initiated this action on May 14, 2024, and his original complaint asserted claims against Defendants City of Atlanta, Officer Matthew Gordon, and Officer John Doe. See Dkt. No. [1]. Although Plaintiff did not know the name of Officer John Doe, Plaintiff attached an image of him and stated that he "may be identified by the photograph" attached to the complaint. Dkt. No. [1] ¶ 2; see Dkt. No. [1-1]. On July 3, 2024, Plaintiff filed an amended complaint "in order to substitute the name of [Defendant Brandon George] for Officer John Doe." Dkt. No. [7] at 1.

Plaintiff's suit alleges municipality liability against Defendant City of Atlanta for Defendant Gordon's order to arrest the protestors and the City's failure to train its officers on protecting citizens' First Amendment rights. Id. ¶¶ 21–34. In addition, Plaintiff brought Section 1983 claims against Defendant Gordon and Defendant George for violations of his First Amendment and Fourth Amendment rights. Id. ¶¶ 18–20, 35–43. Defendants City of Atlanta and

Defendant George have both moved to dismiss Plaintiff's claims against them. Dkt. Nos. [13, 16].[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable

---

[1] The Court is aware that two other judges in this district have recently decided motions to dismiss in factually similar cases. See Dixon v. City of Atlanta et. al., 1:24-cv-02061-JPB and Streiff v. City of Atlanta et. al., 1:24-cv-02118-MHC.

to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Defendants City of Atlanta and Brandon George have moved to dismiss Plaintiff's claims, Dkt. Nos. [13, 16], and Plaintiff opposes both motions. Dkt. No. [14, 17]. The Court addresses each Defendants' respective motions below.

**A. Defendant City of Atlanta**

Defendant City of Atlanta seeks to dismiss Plaintiff's Section 1983 claim, arguing that Plaintiff has not sufficiently alleged municipal liability. Dkt. No. [13] at 4–10. Section 1983 does not "impose liability vicariously on governing bodies" such as municipalities "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978). Accordingly, a municipality "may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Doe v. Sch. Bd. of Broward Cnty., 604 F.3d 1248, 1263 (11th Cir. 2010) (citing Denno v. Sch. Bd. of Volusia Cnty., Fla., 218 F.3d 1267, 1276 (11th Cir. 2000)). Further, "a

4

plaintiff alleging municipal liability under § 1983 must show the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences." Sch. Bd. of Broward Cnty., 604 F.3d at 1263. Lastly, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

Under Section 1983, there are several ways of establishing municipal liability. First, "[a] municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)." Hoefling v. City of Miami, 811 F.3d 1272, 1279 (11th Cir. 2016) (citing Monell, 436 U.S. at 661). Second, a municipality can be liable "if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." Hoefling, 811 F.3d at 1279 (citing Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 403–04). Lastly, municipal liability may attach "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Matthews v. Columbia Cnty., 294 F.3d 1294, 1297 (11th Cir. 2002).

Defendant City of Atlanta contends that Plaintiff cannot establish municipal liability because (1) Defendant Gordon was not a final policymaker; and (2) Plaintiff does not sufficiently allege that Defendant City of Atlanta failed

to train its police officers. Dkt. No. [13] at 4–10. Plaintiff contends that he has sufficiently alleged municipal liability under both theories. Dkt. No. [14-1] at 4–16. The Court addresses the parties' arguments below.

### 1. *Final Policymaker*

Defendant City of Atlanta moves to dismiss Plaintiff's Complaint, contending that Defendant Gordon was not a final policymaker. Dkt. No. [13] at 6–8. Specifically, Defendant City of Atlanta argues that only the Chief of Police, Rodney Bryant, could make orders and promulgate departmental rules attributable to the City, so Defendant Gordon could not make orders as a final policymaker on behalf of Defendant City of Atlanta. Id. at 7–8. Plaintiff responds, arguing that Defendant Gordon was delegated significant authority to order the arrests. Dkt. No. [4] ¶ 32; Dkt. No. [14-1] at 11–12. The Court agrees with Plaintiff.

In addition to the ways of proving municipal liability discussed above, the Supreme Court in Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), explained that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." The Court further stated that liability may arise if "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. at 481. In addition, "authority to make municipal policy . . . may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." Id. at 483.

The Eleventh Circuit has interpreted <u>Pembaur</u> and later Supreme Court precedent "to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." <u>Scala v. City of Winter Park</u>, 116 F.3d 1396, 1399 (11th Cir. 1997). In other words, "the mere delegation of authority to a subordinate to exercises discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." <u>Mandel v. Doe</u>, 888 F.2d 783, 792 (11th Cir. 1989).

Here, Plaintiff alleges that Defendant Gordon acted as a final policymaker for Defendant City of Atlanta "because his order to arrest protestors in the roadway under the circumstances at hand was not reviewable in any way." Dkt. No. [4] ¶ 32. Thus, because Defendant Gordon's decision was "a categorical policy to arrest all individuals that were part of the protest" and was not reviewable by higher-ranking officials such as the Chief of Police, Plaintiff contends that Defendant Gordon was delegated significant final policymaking authority on behalf of Defendant City of Atlanta. <u>Id.</u>

In response, Defendant City of Atlanta argues that the Chief of Police is the only official with the power to make decisions, acts, or omissions attributable to the City. <u>See</u> Dkt. No. [13] at 7–8 (citing the City's ordinances which state that "the Chief of Police shall have the authority to promulgate departmental rules

and regulations").² However, the Eleventh Circuit has held that, "[w]ith respect to a particular action, more than one official or body may be a final policymaker; final policymaking authority may be shared." McMillian v. Johnson, 88 F.3d 1573 (11th Cir. 1996) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988)). Additionally, the Chief of Police's final policymaking authority can be delegated to subordinate officials, such as Defendant Gordon, as long as their orders and actions "are not constrained by official policies and are not subject to review." Mandel, 888 F.2d at 792.

    Here, the Court finds that Plaintiff sufficiently alleges that Defendant Gordon was a final policymaker. First, Plaintiff points out that Defendant Gordon's decision to make the order was not reviewable in any way. Dkt. No. [4] ¶ 32. Considering that Defendant Gordon ordered the arrests and the officers fulfilled the directive shortly after, there is a reasonable inference that Defendant Gordon's order was not subject to any meaningful administrative review by the Chief of Police, Atlanta City Council, or higher-ranking officials. See Holloman v.

---

² Defendant City of Atlanta also points out that its legislative body, the Atlanta City Council, has not enacted an official policy that injured Plaintiff. Dkt. No. [13] at 7. But as Eleventh Circuit precedent makes clear, a plaintiff may claim municipal liability without alleging an official or formal policy. See Hoefling, 811 F.3d at 1279 (stating that "liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the [municipality's] standard operating procedure"); Matthews, 294 F.3d at 1297 (11th Cir. 2002) (stating that municipal liability can be alleged "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority").

Harland, 370 F.3d 1252, 1292 (11th Cir. 2004) ("[I]n assessing whether a governmental decision maker is a final policy maker, we look to whether there is an actual 'opportunity' for 'meaningful review.'"). Since the arrestees like Plaintiff lacked the ability to seek meaningful review of Defendant Gordon's order, it is plausible that Defendant Gordon had the authority to make final policy by ordering arrests in a manner that was potentially violative of the First Amendment. See Scala, 116 F.3d at 1403 n.5 (noting that "if [the officers] had final (i.e., non-reviewable) decision-making authority with respect to termination decisions at the fire department, they would be final policymakers in that subject area").

In conclusion, even without an official policy from the Atlanta City Council or a directive from the Chief of Police, the Court still finds that Plaintiff alleges municipal liability through Defendant Gordon's categorical order to arrest all protestors. Thus, Plaintiff may maintain his Section 1983 claim against Defendant City of Atlanta under the final policymaker theory.

2. *Failure to Train*

Defendant City of Atlanta seeks to dismiss Plaintiff's Complaint, arguing that Plaintiff has not sufficiently alleged municipal liability based on Defendant City of Atlanta's failure to train its officers. Dkt. No. [13] at 8–10. Specifically, Defendant City of Atlanta contends that Plaintiff has failed to allege prior incidents that put the City on notice of a need to train its officers regarding violations of citizens' First Amendment rights. Id. at 8–10. Plaintiff responds,

arguing that Defendant City of Atlanta was on notice from previous complaints filed in this judicial district and recent Supreme Court decisions. Dkt. No. [14-1] at 4–11. The Court agrees with Defendant City of Atlanta.

A municipality's failure to train or supervise its employees can, in some circumstances, result in municipal liability "where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)). Rather than being required to show an express written or oral policy, a plaintiff may prove a policy by showing the city's failure to train demonstrates "deliberate indifference" to its citizens' rights. Gold, 151 F.3d at 1350. For deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id. at 1350–51. "But 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)).

Importantly, "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." Gold, 151 F.3d at 1351; Church v. City of Huntsville, 30 F.3d 1332,

1342–46 (11th Cir. 1994) (holding that plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated). Although notice inherently relies on the quantity of previous incidents and complaints, the Eleventh Circuit also requires that the past complaints have merit. See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that the city did not have adequate notice of past police misconduct even where there had been ten citizen complaints because the plaintiff "never demonstrated that past complaints . . . had any merit").

Here, Plaintiff alleges that Defendant City of Atlanta "has a long history of not adequately training its officers" with regards to respecting citizens' First Amendment rights and claims that this history began with a 2015 contempt order against Defendant City of Atlanta regarding officers violating citizens' rights to film police. Dkt. No. [4] ¶ 22. In addition, Plaintiff points to several cases filed in this district where plaintiffs alleged that similar conduct by Defendant City of Atlanta's officers violated citizens' First Amendment rights. Id. ¶¶ 24–25 (citing Baker v. City of Atlanta, 1:24-cv-04186-MLB, Gadomski v. City of Atlanta, 1:23-cv-04036-TWT, Schilling v. Doherty, 1:22-cv-03772-MLB).

The Court finds that Plaintiff has not sufficiently alleged a deliberate indifference sufficient for a failure-to-train theory. First, Plaintiff relies on a 2015 contempt order against Defendant City of Atlanta, which was in response to allegations that Defendant's police officers violated citizens' rights to film the

police. Dkt. No. [4] ¶ 23. But this contempt order does not relate to the relevant conduct here—pretextual arrests based on pedestrian in the roadway laws. See id. ¶ 24. Although the conduct here and the conduct leading to the contempt order deal with citizens' First Amendment rights, the contempt order does not put Defendant City of Atlanta on notice that its police officers engaged in pretextual arrests to violate citizens' First Amendment rights at a peaceful protest. See Baker v. City of Atlanta, 662 F. Supp. 3d 1308, 1319 (N.D. Ga. Mar. 20, 2023) ("That both the prior incident and this case involve citizens exercising their First Amendment rights is not sufficient to transfer the need for training in one specific areas to the need for training in a distinct area.").

Second, Plaintiff points to three civil actions filed in this district stemming from similar pretextual arrests. See Dkt. No. [4] ¶¶ 24–25. Even if Plaintiff can point to previous complaints or civil actions, Plaintiff does not further allege how these actions are meritorious and demonstrate that Defendant City of Atlanta was on notice of legitimate constitutional violations. See Brooks, 813 F.2d at 1193. For example, in Gadomski v. City of Atlanta, 2024 WL 3070182, 1:23-CV-4036-TWT, at *3 (N.D. Ga. June 20, 2024), the district court found that plaintiff's almost identical allegations under the failure-to-train theory did not "clear the high bar required to show municipal liability under an inadequate training theory" and that the inadequate training was not "the moving force behind the constitutional violation." See also Baker, 662 F. Supp. 3d at 1319 (same). Although some courts have identified that a quantity of isolated instances is

enough to form a pattern, Plaintiff's allegations of other civil actions filed in this district are insufficient without a showing that similar allegations are meritorious.³ See Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1122 (N.D. Ga. Mar. 31, 2016) (finding that "one or two incidents is generally sufficient to indicate a pattern," but on a motion to dismiss, "allegations of anything more than that are generally sufficient"); but see Brooks, 813 F.2d at 1193 (finding that "the number of complaints bears no relation to their validity" and that the municipality was not on notice because the plaintiff "never demonstrated that past complaints of police misconduct had any merit"). Without a showing of legitimate constitutional violations, Plaintiff's allegations do not amount to the deliberate indifference necessary for a failure-to-train claim.

Because Plaintiff has not sufficiently demonstrated a deliberate indifference on the part of Defendant City of Atlanta, the Court holds that Plaintiff has not sufficiently pled municipal liability under the failure-to-train theory. But, because Plaintiff plausibly alleged that Defendant George was a final

---

³ In addition to the suits filed in this judicial district, Plaintiff discusses recent Supreme Court opinions that decided the illegality of pretextual arrests made in retaliation to speech that is protected under the First Amendment. See Dkt. No. [14-1] at 5–6 (discussing Nieves v. Bartlett, 587 U.S. 391 (2019) and Gonzales v. Trevino, 602 U.S. 653 (2024)). Neither of these Supreme Court opinions discussed pretextual arrests in the context of whether a municipality is on notice of constitutional violations. Although these cases are helpful for determining clearly established law for qualified immunity purposes, that precedent does not translate to the notice inquiry for deliberate indifference.

policymaker on behalf of Defendant City of Atlanta, Plaintiff may maintain its Section 1983 municipality liability claim.

### B. Defendant George

Defendant George seeks to dismiss Plaintiff's Complaint, arguing that Plaintiff's claim against him is barred by the statute of limitations. Dkt. No. [16-1] at 2–6. Specifically, Defendant George contends that Plaintiff's amendment to substitute his name for John Doe does not relate back to the filing of Plaintiff's original complaint. Id. at 3. Plaintiff responds that the original naming of Defendant George as John Doe was a mistake concerning Defendant George's identity and thus relates back to the original filing of the complaint as allowed under the Federal Rules of Civil Procedure. Dkt. No. [17-1] at 4.

"[C]laims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing Wilson v. Garcia, 471 U.S. 261, 275–76 (1985)). Plaintiff's claim was brought in Georgia, where the governing limitations period is two years. See O.C.G.A. § 9-3-33; Gardei v. Conway, 868 S.E.2d 775, 780 (Ga. 2022). The arrest that gave rise to Plaintiff's cause of action occurred on May 14, 2022, and the action was commenced on May 14, 2024. See Dkt. No. [4] ¶ 12; Dkt. No. [1]. In the original complaint, Plaintiff sued Defendants City of Atlanta, Officer Matthew Gordon,

and Officer John Doe. Dkt. No. [1]. Plaintiff attached a photo of Officer John Doe as an exhibit but did not know his actual name at the time. See Dkt. No. [1-1]; Dkt. No. [1] ¶ 2 ("Defendant John Doe may be identified by the photograph attached to this complaint . . . ."). Later, on July 3, 2024, Plaintiff filed an amended complaint and substituted Defendant Brandon George for Defendant Officer John Doe. Dkt. No. [4].

Although Plaintiff's amendment to substitute Defendant George for John Doe occurred after the limitations period ended, Federal Rule of Civil Procedure 15 allows an amended complaint to relate back to an original pleading for statute of limitations purposes under three circumstances:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Defendant George concedes that he "received notice of the action within 90 days of the complaint being filed" as required by Federal Rules of Civil Procedure 4(m) and 15(c)(1)(C)(i). Dkt. No. [16-1] at 5.

15

Thus, the critical provision is Rule 15(c)(1)(C)(ii). Specifically, the parties disagree whether Plaintiff's use of the name John Doe was a "mistake concerning the proper party's identity" as required by Rule 15(c)(1)(C)(ii). Defendant George contends that Plaintiff's lack of knowledge regarding Defendant George's name is not a "mistake" as required by the statute. Dkt. No. [16-1] at 5. Plaintiff responds that Defendant George's view is too narrow and that a mistake also encompasses lack of knowledge of Defendant George's name. Dkt. No. [17-1] at 8. The Court agrees with Defendant George.

The Eleventh Circuit has defined a mistake as "an error, such as a misnomer or a mischaracterization." Wayne v. Jarvis, 197 F.3d 1098, 1103 (11th Cir. 1999). In Wayne, the plaintiff's original complaint alleged claims against "John Doe" defendants, but after the statute of limitations had run, the plaintiff sought to amend his complaint and substitute the real names of several deputy sheriff officers for the "John Doe" defendants. Id. at 1101. The Eleventh Circuit decided that the plaintiff's lack of knowledge regarding the identities of the defendants was not "a mistake concerning the identity of the proper party." Id. at 1103. The Eleventh Circuit cited to the commentary of the Federal Rules of Civil Procedure which stated that Rule 15(c)(1)(C) would be used when there was "the problem of a misnamed defendant" and that the rules would allow an amendment "to correct a formal defect such as a misnomer or misidentification."

Similar to Wayne, Plaintiff here used the name "John Doe" because he lacked knowledge of Defendant George's name when he filed the original

16

complaint. Although Plaintiff knew Defendant George's appearance, he lacked knowledge of his name, and thus, his identity. Because Plaintiff was not mistaken as to the identity of Defendant George, Rule 15 does not allow for Plaintiff's amendment to relate back.

Plaintiff seeks to draw a parallel between the current facts and those in Krupski v. Costa Crociere S. p. A., 560 U.S. 538 (2010). In Krupski, the plaintiff initially sued the wrong defendant, Costa Cruise Lines, instead of Costa Crociere, although plaintiff knew of Costa Crociere's existence. Id. at 543–44. Plaintiff filed an amended complaint, seeking to bring the same claims against Costa Crociere, after the limitations period had run. Id. at 544. The Supreme Court found that the plaintiff's amendment would relate back to the original complaint because, even if the plaintiff mistakenly chose to sue a different defendant based on a misimpression, the deliberate nature of the choice does not foreclose the finding that Rule 15(c)(1)(C)(ii) has been satisfied. Id. at 549. Ultimately, the Supreme Court allowed the relation back because the plaintiff made a "mistake" as to the parties' roles and their respective liability to the plaintiff. Id.

Contrary to Plaintiff's argument that the facts of Krupski are analogous to the current case, Plaintiff's lack of knowledge regarding the name of Defendant George is not the same as the plaintiff's choice to sue the incorrect party in Krupski. Krupski did not involve any "John Doe" defendants, and the Krupski plaintiff made an actual mistake as to the correct party to sue. Id. at 539. Unlike the plaintiff in Krupski, Plaintiff's use of John Doe was not a "mistake" or an

17

incorrect choice as to which defendant was liable. Rather, Plaintiff here simply lacked knowledge as to Defendant George's name which does not allow for relation back under Rule 15 and Eleventh Circuit precedent. See Lelieve v. Oroza, 2011 WL 5103949, No. 10-23677-CIV, at *4 (S.D. Fla. Oct. 27, 2011) (holding that Krupski does not allow an amendment alleging unnamed defendants' identities to relate back under Rule 15 because lack of knowledge does not constitute a mistake).[4]

Because Plaintiff failed to include Defendant George's name in the original complaint due to his lack of knowledge, the Court finds that Plaintiff's Amended Complaint does not relate back to the original complaint under Rule 15 of the Federal Rules of Civil Procedure. Thus, the statute of limitations bars Plaintiff's claims against Defendant George, and the Court therefore dismisses Defendant George from this action.

## IV. CONCLUSION

In accordance with the foregoing, Defendant City of Atlanta's Motion to Dismiss is **GRANTED in part** and **DENIED in part:** Defendant City of Atlanta's Motion is **GRANTED** as to Plaintiff's failure-to-train theory but

---

[4] Even after the Krupski decision, the Eleventh Circuit continues to follow the principles from Wayne v. Jarvis and holds that a plaintiff's lack of knowledge of a defendant's identity does not come within the scope of Rule 15. See Bloodworth v. United States, 623 F. App'x 976, 979 (11th Cir. 2015) ("A plaintiff's amendment to identify parties previously designated as 'John Doe' defendants in the complaint does not relate back to the filing of the original complaint . . . because the amendment is made to correct the plaintiff's lack of knowledge about whom to sue, not a mistake by the defendant in identifying the proper party.").

**DENIED** as to Plaintiff's theory that Defendant Gordon was a final policymaker. Additionally, Defendant Brandon George's Motion to Dismiss is **GRANTED** and Defendant George is **DISMISSED** from this action.

**IT IS SO ORDERED** this 4th day of February, 2025.

_____
**Leigh Martin May**
**United States District Judge**